UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JESSICA L. HALEY                                  CIVIL ACTION NO. 08-cv-0679
o/b/o ALH

VERSUS

U.S. COMMISSIONER SOCIAL              MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION


**MEMORANDUM RULING**

**Introduction**

Jessica Haley ("Plaintiff") filed an application for Supplemental Security Income on behalf of her daughter, ALH, who was age 13 when ALJ W. Thomas Bundy held a hearing and issued a decision that denied the claim. The Appeals Council denied a request for review. Plaintiff filed this civil action seeking judicial review. Plaintiff argues that the ALJ erred when he found that her impairments do not functionally or medically equal a listed impairment. Pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the action was referred to the undersigned for decision and entry of judgment. For the reasons that follow, the Commissioner's decision to deny benefits will be affirmed.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal

standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

A three-step evaluation process is used to determine whether a child is disabled under the Act. See Swist ex rel. Green v. Barnhart, 177 Fed. Appx. 414, 416 (5th Cir. 2006). The first question is whether the child is engaged in substantial gainful activity, and the ALJ found that ALH was not. The second question is whether the child has an impairment that is "severe" within the meaning of the regulations. The ALJ found that ALH had the following severe impairments: chronic anxiety with agoraphobia, chronic adjustment disorder with mixed disturbance of emotions and conduct, detrusor instability, chronic cystitis, chronic follicular cystitis, urinary incontinence, and chronic musculoskeletal pain secondary to a fibromyalgia-like syndrome. The third question is whether those impairments are medically or functionally equivalent in severity to the impairments listed in the disability regulations. Answering this question requires a review of the relevant evidence.

ALH has had bladder problems since birth. She wears Poise pads and Depends to address urinary incontinence. Physicians have stretched her urethra and applied Botox in an

effort to address the problem, but the efforts have not been successful. The child has experienced wetting accidents in school in the past, and she has developed social embarrassment and shyness. She has become homebound from school and does not want to be around others. ALH has received some mental health treatment for depression, much of which is thought to be caused by her physical problems. Dr. Pressly examined ALH at the local Shriner's hospital for evaluation of her leg pain. He found that she had restricted range of motion in all her extremities and tenderness in several areas. He recommended that ALH continue counseling, and he prescribed medications as well as exercise, thermotherapy, and massage.

Dr. Frances Hagaman conducted a psychiatric evaluation in 2005, when the child was 10 years old. The child was still passing in school, having never failed a grade, and participated in some youth activities at church. She was beginning to lose interest in going to school, and she had experienced problems with other children making fun of her because she had to wear pull-ups. The child was judged to be in the range of normal intellect, and she demonstrated fair judgment and reasoning for her age. Dr. Hagaman diagnosed depressive disorder, as well as the multiple physical health problems. He assigned a 55 on the Global Assessment of Functioning (GAF). Tr. 190-92.

Dr. Hagaman and the child's caseworker referred her for a consultative evaluation by clinical psychologist Michelle Yetman, Ph.D. At the evaluation in December 2005, the child was 11.5 years old and was receiving regular education services in the sixth grade. She had

never failed or repeated a grade, and had never been suspended or (reportedly) exhibited behavioral problems at school. She had missed several days of school due to medical conditions, but she had been diligent about keeping up with her school work, and she used a computer to get her homework assignments. The child appeared to be somewhat shy and quiet, but she was cooperative and participated in the evaluation. She received average results on an intelligence test and in the academic areas of reading and spelling. She received low average scores in math skills. There was no evidence of a learning disability. Plaintiff's mother reported that the child was unhappy or depressed most of the time, cried a lot, and had sudden outbursts of screaming, yelling, and destroying things. The child nonetheless had a positive attitude towards school and high academic self esteem. She had moderate levels of anxiety. Dr. Yetman also assigned a GAF of 55. She recommended regular therapeutic management, instruction, and behavioral exercises designed to teach techniques to manage anxiety and fears. She also recommended that steps be taken to ensure sound sleep to avoid exacerbation of health conditions, and to increase social opportunities through church, volunteer groups, or school. Tr. 178-84.

In April 2007, Robert Krenek, Ph.D., and Samuel Thomas, Ed.D., performed a psychological evaluation for the agency. The child was tested and continued to appear to be functioning in the low average to average range of intellectual abilities. Her mood was reported to be predominantly depressed and anxious. The examiners observed a "somewhat depressed" affect. The child said she did not like to be around other people because she was

afraid she would urinate on herself. The data indicated that the child may have difficulties performing academic tasks in some areas in a timely manner and that she did not display age appropriate social skills across social situations. The examiners recommended that the child continue with medication management and counseling for treatment of her depressive and anxious symptoms. Tr. 356-60.

The ALJ discussed this and other evidence at length in connection with his decision on whether the child's impairments are functionally equivalent in severity to impairments listed in the regulations.

A decision on functional equivalence requires consideration of the child's limitations in six areas or domains. The domains are:

    (1) acquiring and using information

    (2) attending and completing tasks

    (3) interacting and relating with others

    (4) moving about and manipulating objects

    (5) caring for your self

    (6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The limitations imposed by an impairment are described in increasing levels of severity: none, moderate, marked and extreme. The child will be considered disabled if she has an extreme limitation in one domain or a marked limitation in two domains. Section 416.926a(d).

Moderate is not specifically defined, but a marked limitation is defined as "more than moderate" but "less than extreme." A marked limitation interferes seriously with the child's ability to independently initiate, sustain or complete activities. It is the equivalent of the functioning you would expect to find on standardized testing with scores that are at least two but less than three standard deviations below the mean. Section 416.926a(e)(2).

An extreme limitation is "more than marked." A child has an extreme limitation when the impairment interferes very seriously with his ability to independently initiate, sustain or complete activities. Extreme is the rating given to the worst limitations, but it does necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning one would expect to find on standardized testing with scores that are at least three standard deviations below the mean. Section 416.926a(e)(3).

The ALJ carefully reviewed this and other evidence in detail in his 22-page written decision. He found that the child had no limitation in the domains of acquiring and using information, interacting and relating with others, and moving about and manipulating objects. He found that the child had a "less than marked" limitation in the domains of attending and completing tasks, caring for yourself, and health and physical well being. Those findings led to a conclusion that the child's impairments did not functionally equal a listing. Tr. 42-48.

Plaintiff does not specifically attack any of the findings with respect to the areas of functioning, and she notes that those findings are consistent with the opinion of the state agency medical and psychological consultants. Plaintiff argues that the decision is

nonetheless not supported by substantial evidence because the decision did not address other evidence that suggested a GAF of only 30, which evidence was not available to the state agency consultants. Plaintiff points to an April 2006 evaluation by Orlise Aubrey, a social worker at the Office of Mental Health. The report stated that services were sought because of angry outbursts and anxiety/panic attacks once or twice a day, and withdrawal because of bed wetting. Moderate depression and anxiety was noted. The examiner wrote that the child was very anxious, with habitual nail biting that caused discoloration around her nails, and that she was withdrawn around her peers. One of the several boxes checked or completed in the lengthy form was for the Axis V impression. The examiner estimated a current rating of 30, with the highest in the past year of 40. Tr. 317-45, at 335.

The GAF scale seen in adult cases is replaced by the Children's Global Assessment Scale for children under 18. The range of 51 to 60 (consistent with the 55 noted in the reports most relied on by the ALJ) indicates a moderate degree of interference in functioning of most social areas or severe impairment of functioning in one area, such as might result from suicidal preoccupations and ruminations, school refusal, and other forms of anxiety, obsessive rituals, major conversion symptoms, frequent anxiety attacks, poor to inappropriate social skills, frequent episodes of aggressive or other anti-social behavior, with some preservation of meaningful social relationships.

A lower score of 31 to 40, such as indicated in the social worker's report, suggests major impairment of functioning in several areas and inability to function in one of those

areas, i.e. disturbed at home, at school, with peers, or in the society at large, e.g., persistent aggression without clear instigation, markedly withdrawn and isolated behavior due to mood or thought disturbance, suicidal attempts with clear lethal intent. Such children are likely to require special schooling and/or hospitalization or withdrawal from school (but this is not a sufficient criterion for inclusion in this category). A score in the 21 to 30 range indicates inability to function in almost all areas, such as a child in bed all day without taking part in social activities.

     The court is not persuaded that the state agency evaluators would have changed their opinion had only they seen the 30 and 40 GAF estimated by the social worker. The descriptions of the child's abilities, limitations, and difficulties seem to coincide more readily with the score assessed by Drs. Yetman and Hagaman. More important, the ALJ merely noted the 55 GAF score among the many facts that he included in his written decision, but there is no indication that he placed particular significance on the 55 in reaching his decision on functional equivalence. Rather, the written decision indicates that the ALJ relied on the descriptions of the child's abilities and limitations as described at some length in the reports. The ALJ did make note of Mr. Aubrey's report, although he did not cite the GAF estimates. The court finds that, considering the overall record, the ALJ's lack of specific discussion of the later GAF estimate does not deprive his decision of substantial evidence. The written decision contains a fair and reasonable discussion of all the relevant evidence, and it reaches a sound conclusion that is well supported by that evidence.

Plaintiff next argues that the child's impairments medically equal Listing 112.06 for anxiety disorders. The state agency consultants, whom the regulations deem experts in such matters, did not indicate that the child's impairments medically equal a listing. Tr. 193-205. Social Security Ruling 96-6p. The regulation that Plaintiff cites requires not only a persistent, irrational fear of a specific situation that results in a compelling desire to avoid it, but it also requires marked impairments in at least two areas. Plaintiff suggests that she has a marked impairment in age-appropriate social functioning and in maintaining concentration, persistence, or pace. The ALJ found that Plaintiff had no limitation in interacting and relating with others. The evidence showed that the child did not have behavior problems at school, although she was shy and often avoided others, but there was evidence that she frequently played with a cousin. One may reasonably argue that there was some limitation in this area, but there is not such a compelling case for a marked impairment in age-appropriate social functioning that the court must mandate such a finding despite the agency decision. Plaintiff has also not pointed to evidence to suggest an impairment approaching a marked level maintaining concentration, persistence, or pace. The court finds that Plaintiff has not presented a strong enough case for medical equivalence under this regulation to require reversal and remand. Accordingly, a judgment will be entered affirming the Commissioner's decision.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 23rd day of September, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE